# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHERROCK BROTHERS, INC.,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION** |
| | : | |
| **DAIMLERCHRYSLER MOTORS** | : | **NO. 06-CV-351** |
| **COMPANY, LLC,** | : | **(Caputo, J.)** |
| | : | |
| **Respondent.** | : | **ELECTRONICALLY FILED** |

**SHERROCK BROTHERS, INC.'S OMNIBUS BRIEF IN SUPPORT
OF PETITION TO VACATE ARBITRATION AWARD
AND IN OPPOSITION TO RESPONDENT'S CROSS-PETITION
TO CONFIRM ARBITRATION AWARD**

Kevin C. Quinn
Pa. I.D. No. 53625
Frank J. Tunis, Jr.
Pa. I.D. No. 84264
**WRIGHT & REIHNER, P.C.**
148 Adams Avenue
Scranton, Pennsylvania 18503
(570) 961-1166

Attorneys for Petitioner

# TABLE OF CONTENTS

I.   SUMMARY OF RELEVANT FACTS ............................................................1

II.  ARGUMENT ..................................................................................................6

    A.   The Panel Abused And Exceeded Its Powers By Granting
        DMC's Summary Judgment Motion And Denying Sherrock
        The Opportunity To Engage In Discovery And An Evidentiary
        Hearing ........................................................................................................6

    B.   The Panel Committed a Manifest Disregard for the Law in
        Finding that Sherrock Waived its Right to Arbitration.......................14

    C.   The Panel Also Committed a Manifest Disregard for the Law in
        Finding That Sherrock's Claims Were Barred by the Doctrines
        of Collateral Estoppel and/or Res Judicata ........................................20

        1.   The Issues Decided by the Board Were Not The Same as
            Those Submitted to Arbitration ................................................21

        2.   Sherrock Did Not Have an Opportunity to "Fully Litigate"
            Its Claims Before the Board or the Commonwealth Court.......23

III.  CONCLUSION...............................................................................................24

# TABLE OF AUTHORITIES

## Cases

Bearoff v. Bearoff Brothers, Inc., 327 A.2d 72 (1974) ..........................................20

Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
910 F.2d 1049 (2d Cir. 1990)...................................................................19

Commercial Refrigeration, Inc. v. Layton Constr. Co.,
319 F. Supp.2d 1267 (D. Utah 2004)........................................................12

Generica, Ltd. v. Pharmaceutical Basics, Inc, 125 F.3d 1123 (7th Cir. 1997).........13

Hotels Condado Beach, La Concha & Convention Ctr. v. Union De
Tronsquistas Local 901, 763 F.2d 34 (1st Cir. 1985) .................................. 12, 13, 14

International Union v. Kraft Foods, 409 F. Supp. 559 (E.D. Pa. 1976) .................13

Kiewit v. International Brotherhood of Electrical Workers, Local 103,
76 F. Supp.2d 77 (D. Mass. 1999) ..........................................................13

Konkar Maritime Enterprises S.A. v. Compagnie Belge D'Affretement,
668 F. Supp. 267 (S.D.N.Y. 1987)...........................................................6

Langston v. National Media Corp., 617 A.2d 354 (Pa. Super. 1992) .............. 17, 18

Local Union No. 251 v. Narragansett Improvement Co.,
503 F.2d 309 (1st Cir. 1974).....................................................................13

M & L Power Services, Inc. v. American Networks International,
44 F. Supp.2d 134 (D. R.I. 1999). ...........................................................13

Marranca General Contracting Co., Inc. v. Amerimar Cherry Hill Associates
Ltd. Partnership, 610 A.2d 499 (Pa. Super. 1992)....................................15

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,
756 F.2d 1048 (4th Cir. 1985)...................................................................19

Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806 (3d Cir. 1989) ..... 18, 19

PMC Distributing Co., Inc. v. Huber & Suhner, A.G.,
854 F.2d 355 (9th Cir. 1988)...................................................................19

Roadway Package System, Inc. v. Kayser, 257 F.3d 287 (3d Cir. 2001)...............15

Rue v. K-Mart Corp., 713 A.2d 82 (Pa. 1998) .........................................20

Safeguard Mutual Ins. Co. v. Williams, 345 A.2d 664 (Pa. 1975).........................20

Sauer-Getriebe KG v. White Hydraulics, Inc.,
715 F.2d 348 (7th Cir. 1983), cert. denied, 464 U.S. 1070......................................19

Shaffer v. Smith, 673 A.2d 872 (Pa. 1996)................................................20

Sheldon v. Vermonty, 269 F.3d 1202 (10th Cir. 2001) ...........................................11

St. Clair Area School Dist. Bd. of Ed. v. E.I. Associates,
733 A.2d 677, 682 n.6 (Pa. Commw. 1990) .............................................16

Stevenson v. Silverman, 208 A.2d 786 (Pa. 1965), cert. denied,
382 U.S. 833 (1965).............................................................................20

Teamsters Local 312 v. Matlack, Inc., 118 F.3d 985 (3d Cir. 1997) ......................6

Teradyne v. Mostek Corp., 797 F.2d 43 (1st Cir. 1986).........................................18

The Chem-Met Co. v. Metaland International, Inc.,
Civil Action No. 96-02548 (D.D.C. March 25, 1998) (Flannery, J.) ................ 9, 10

Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.,
607 F.2d 649 (5th Cir. 1979)..................................................................6, 7

Vento v. Quick & Reilly, Inc., 128 Fed. Appx. 719 (10th Cir. 2005) ......................11

**Statutes**
Federal Arbitration Act, 9 U.S.C. § 9 ....................................................1
9 U.S.C. § 10(a)(3) & (4)……………..………………………………………………6
63 P.S. § 818.13(a)...............................................................................22
63 P.S. § 818.13(d) .......................................................................... 19, 22

Petitioner, Sherrock Brothers, Inc. ("Sherrock"), by its undersigned counsel, Wright & Reihner, P.C., hereby files this Omnibus Brief in Support of its Petition to Vacate Arbitration Award and in Opposition to Respondent DaimlerChryslyer Motors Company, LLC's ("DMC's") Cross-Petition to Confirm that Award.[1]

## I.  <u>SUMMARY OF RELEVANT FACTS</u>

A detailed statement of the legal and factual background of this case is set forth in Sherrock's February 15, 2006 Petition to Vacate the Arbitration Award entered on or about November 18, 2005 in American Arbitration Association ("AAA") Matter No. 14 117 02299 03.  By way of brief summary, pursuant to a Sales and Service Agreement dated September 13, 1994, Sherrock was authorized by DMC's predecessor, Chrysler Corporation, to operate a Dodge Dealership in Hazleton, Pennsylvania.  (<u>See</u> Sherrock's February 15, 2006 Appendix of Exhibits, "Appendix," at Exhibit 1.)  From September 13, 1999 through January 25, 2002, Sherrock was owned and operated by Theodore Sherrock and his father, Edward

---

[1]     The same legal and factual bases which compel an order vacating the arbitration award in question, discussed *supra*, also compel a denial of DMC's Cross Petition to confirm that award under Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9.  One statement contained in DMC's Brief in support of its Cross-Petition, however, cannot go without comment.  DMC's contention that it "properly proceeded with arbitration under the Dealer Agreement and has not failed, neglected or refused to arbitrate under the agreement" is patently untrue.  As set forth below, Sherrock's right to arbitrate under the Agreement included its right to discovery and an evidentiary hearing – both of which rights DMC vigorously contested in its effort to prevent Sherrock from having its day in Court.

Sherrock (the "Sherrocks").    In January, 2002, however, Robert V. Rinaldi ("Rinaldi") acquired 100% of Sherrock's voting stock in exchange for significant capital Rinaldi agreed to infuse into the business.    (Appendix Exhibit 2.) Significantly, although the Sherrocks remained as officers of the company, all corporate actions taken after January, 2002 required Rinaldi's approval under the January 25, 2002 Agreement.  (Id.)

DMC was advised of the foregoing corporate changes involving Sherrock and, by mid-2002, was fully aware of the fact that all corporate actions of Sherrock required Rinaldi's imprimatur.  (See Appendix Exhibits 8 and 9.)  DMC was also aware of the fact that throughout 2002 Rinaldi infused more than $650,000 into Sherrock's operations, including satisfying nearly $400,000 of Sherrock debt owed to DMC.  (See Appendix Exhibit 11 at ¶ 12.)[2]

Nevertheless, beginning in late 2002, DMC, upset that Rinaldi would not accede to certain demands it sought to impose on Sherrock's operations, conspired with the Sherrocks to wrest control of the Sherrock franchise away from Rinaldi.

---

[2]    DMC's attempt to disavow knowledge of Rinaldi's voting rights is disingenuous.  As early as May 13, 2002, counsel for DaimlerChrysler Services North America LLC, an admitted DMC affiliate, acknowledged receipt and review of the January 25, 2002 Agreement pursuant to which Rinaldi acquired a "controlling interest" in Sherrock.  (Appendix Exhibit 9.)  By letter dated October 24, 2002, DMC was also reminded that under the January 25, 2002 Agreement Theodore Sherrock "pledged the stock and all assets of Sherrock" to Rinaldi "for a much-needed infusion of cash."  (Appendix Exhibit 16.)  Significantly, these events took place before DMC conspired with Theodore Sherrock to surrender the Sherrock franchise without Rinaldi's knowledge or required approval.

(See Sherrock's Petition at ¶¶ 25-28; Appendix Exhibits 17-19.)   To this end, DMC convinced Theodore Sherrock to exploit his title as Sherrock's President – which DMC knew carried no real authority – to voluntarily terminate Sherrock's franchise Agreement with DMC on or about November 11, 2002.   (Sherrock Petition at ¶ 27; Appendix Exhibits 17 and 18.)   Thereafter, by letter dated December 12, 2002, DMC advised the Pennsylvania State Board of Vehicle Manufacturers Dealers and Salespersons (the "Board") that it was terminating the Sherrock franchise.  (Sherrock's Petition at ¶ 29; Appendix Exhibit 20.)

Rinaldi immediately sought a stay of the termination of the Sherrock franchise by filing a Petition with the Board on or about December 23, 2002. (Appendix Exhibit 21.)  After a Board-ordered mediation proved unsuccessful, the Board, despite Sherrock's procedural objection and request for a hearing on the merits, granted summary judgment in DMC's favor.  (See Appendix Exhibit 23.) Notably, however, the Board ruled that it had neither the authority nor expertise to decide whether, as a matter of corporate law, Theodore Sherrock's DMC-coerced "voluntary termination" letter of November 11, 2002 was a valid, binding act.  (Id.)

Sherrock, which was never provided with an evidentiary hearing by the Board, thereafter sought appellate review with the Pennsylvania Commonwealth and Supreme Courts, to no avail.  In the meantime, on or about October 3, 2003, Sherrock, upon learning that DMC was about to issue a Dodge Franchise to

another Dealer in the Hazleton, Pennsylvania area, filed a Complaint and Petition for Preliminary Injunction against the Sherrocks and DMC in the Luzerne County Court of Common Pleas. Within a matter of days, however, and prior to any evidentiary proceedings in that case, Sherrock withdrew the state court action, without prejudice.

On October 22, 2003, less than three (3) weeks later, Sherrock filed a formal demand for arbitration with the AAA pursuant to Section 9 of the Franchise Agreement. The relief sought by Sherrock in its Arbitration Demand included, inter alia, reinstatement of the Dealer Contract and recoupment of lost profits and of the value of Sherrock's Dealer Contract and the business to be represented thereby. (See Appendix Exhibit 27.) The core issues underlying each of the claims – to wit, that Theodore Sherrock's "voluntary" surrender of the Sherrock Franchise on or about November 11, 2002 was a legal nullity and that DMC was fully aware and Theodore Sherrock's inability to bind the corporation as of that date – have never been decided by either the Board or any other Court.[3]

---

[3]    Contrary to DMC's erroneous suggestion, when it denied Sherrock's appeal from the Board's dismissal of Sherrock's administrative petition, the Pennsylvania Commonwealth Court did not conclusively decide these issues. The Commonwealth Court also specifically noted that there were gaps in the limited record developed before the Board with respect to DMC's knowledge that Theodore Sherrock did not have authority to bind Sherrock as of November 11, 2002. (See Appendix Exhibit 26 at p. 5.)

As it did in the proceedings before the Board, DMC sought to prevent Sherrock from having its day in court and the opportunity to develop factual evidence of DMC's conspiracy to unlawfully wrest the Sherrock Franchise away from Rinaldi by filing a summary judgment motion.  Sherrock opposed that effort on the grounds that, inter alia, summary judgment was inappropriate in the context of commercial arbitration proceedings under the AAA.  Although recognizing that summary judgment is a "disfavored" practice in commercial arbitration cases, the AAA panel nevertheless granted summary judgment in DMC's favor and against Sherrock.  (Appendix Exhibit 30 at p. 8.)  The Panel further rejected Sherrock's request to engage in discovery.  (Appendix Exhibit 29 at p. 19.)

As set forth in Sherrock's Petition, and elaborated on below, the Panel clearly abused and exceeded their powers, and manifestly disregarded the law, when it granted DMC's motion and denied Sherrock the right to engage in discovery and have its claims decided after an evidentiary hearing.  Accordingly, the Panel's decision should be vacated and this matter should be remanded back to the AAA, before a new panel, so that Sherrock can finally have its day in Court.

II.   **ARGUMENT**

   A.   **The Panel Abused And Exceeded Its Powers By Granting
        DMC's Summary Judgment Motion And Denying Sherrock
        The Opportunity To Engage In Discovery And An
        Evidentiary Hearing**

Section 10 of the Federal Arbitration Act provides the primary grounds upon
which a court may vacate an arbitration award.  Of particular relevance here, the
court may issue an order vacating an arbitration award "where the arbitrators were
guilty of misconduct . . . in refusing to hear evidence pertinent and material to the
controversy," or "where the arbitrators exceeded their powers, or so imperfectly
executed them that a mutual, final, and definite award upon the subject matter
submitted was not made.  9 U.S.C. § 10(a)(3) & (4).  Interpreting the foregoing
provisions of the FAA, the Third Circuit has emphasized that "[i]t has become
axiomatic that a district court may vacate an award if a party to an arbitration
proceeding has not been given notice and an opportunity to present arguments **and
evidence on the merits of the dispute**."  Teamsters Local 312 v. Matlack, Inc.,
118 F.3d 985, 995-96 (3d Cir. 1997) (alteration and emphasis added).  As support
for this pronouncement, the Third Circuit relied upon, inter alia, Konkar Maritime
Enterprises S.A. v. Compagnie Belge D'Affretement, 668 F. Supp. 267 (S.D.N.Y.
1987), wherein the Court explained:

> All parties in an arbitration proceeding are entitled to
> notice and an opportunity to be heard.  Totem Marine
> Tug & Barge, Inc. v. North American Towing, Inc., 607

F.2d 649, 651 (5th Cir. 1979) (citations omitted). Parties **must be allowed to present evidence** without unreasonable restriction . . . and **must be allowed to cross-examine witnesses.** <u>Wright-Bernet, Inc. v. Amalgamated Local Union No. 41</u>, 501 F. Supp. 72, 74 (S.D. Ohio 1980). **Where a party to an arbitration does not receive a full and fair hearing on the merits, a district court will not hesitate to vacate the award**.

<u>Id</u>. at 271 (alteration in original) (emphasis added).

In addition to the clear right to an evidentiary hearing under the FAA, as confirmed by the Third Circuit, the right to an evidentiary hearing is also guaranteed under the Commercial Arbitration Rules of the American Arbitration Association – the Rules governing the underlying arbitration as agreed upon by the parties in the Dealership Agreement. Those Rules include, but are not limited to, the following:

R-22. Date, Time, and Place of Hearing

The arbitrator **shall** set the date, time, and place for hearing. . . . The AAA **shall** send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed upon by the parties.

R-30. Conduct of Proceedings

(a) The claimant **shall present evidence** to support its claims. The respondent **shall present evidence** to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equally **and that each party has the right to be heard and is given a fair opportunity to present its case**.

* * *

> (c) The parties may agree to waive **oral hearings** in any
> case.  [Emphasis added.]

Despite DMC's strained assertions to the contrary, the aforesaid Rules clearly

mandate an evidentiary hearing to determine the merits of a dispute submitted to

arbitration absent a waiver by the parties.[4]

Although Defendant cites to Rule R-31 and litters its opposition papers with

other references to an arbitrator's ability to limit or exclude the presentation of

evidence which is cumulative or irrelevant, neither the FAA nor the AAA Rules of

Commercial Arbitration allow for an arbitrator to dispense with an evidentiary

hearing altogether.  (See Defendant's Memorandum of Law In Opposition To

Vacate Arbitration Award, pp. 19-24).[5]   In fact, DMC's attempt to equate an

---

[4]   DMC's suggestion that Sherrock waived its right to a full evidentiary
hearing and, instead, agreed that its claims could be decided by way of summary
judgment because the Dealer Agreement granted the arbitration panel "all powers
of law and equity . . . necessary to resolve the issues in dispute," (DMC's Brief at
p. 18), is absurd.  Indeed, the beginning of that very sentence, which DMC
conveniently omits, contains the qualifier:  "Except as limited hereby . . ."
(Appendix Exhibit 1 at p. 4.)  A review of the arbitration provisions set forth in
Paragraph 9 of the Dealer Agreement clearly confirms Sherrock's right to engage
in discovery and an evidentiary hearing.  Moreover, Paragraph 9 also specifically
binds the parties to the AAA Rules of Commercial Arbitration which, as set forth
above, require an evidentiary hearing on the merits.

[5]   Rule 31(c) provides that "the Arbitrator shall determine the admissibility,
relevance, and materiality of the evidence offered and may exclude evidence
deemed by the arbitrator to be cumulative or irrelevant."

arbitrator's ability to limit the presentation of evidence with the right of an arbitrator to dispense with a hearing altogether has been squarely rejected by the court in The Chem-Met Co. v. Metaland International, Inc., Civil Action No. 96-02548 (D.D.C. March 25, 1998) (Flannery, J.).[6]

In Chem-Met, the Court was faced with the exact issue presented by Plaintiff in the instant motion to vacate – whether the arbitrators' dismissal of the action by way of summary judgment without an evidentiary hearing violated the FAA and the AAA Rules of Commercial Arbitration agreed upon by the parties.  The Court ruled in the affirmative and vacated the award of the arbitration panel under Section 10 of the FAA.  In doing so, the court explained that while the AAA Rules authorize arbitrators to "take steps to expedite the proceedings," the court does not interpret those Rules "as permitting them to dispense with an evidentiary hearing altogether."  Id. at p. 5.  The court further explained that:

> Even recognizing the need for flexibility in arbitration, it is a bedrock principle that each party must be given a full opportunity to present its case at a hearing on the evidence. . . . By deciding the case on summary judgment, the arbitrators denied [plaintiff's] rights to present its case in full and to test [defendant's] case through cross-examination.

Id. at p. 9 (alterations added).  Inasmuch as the arbitration panel in the instant action likewise exceeded their powers by improperly dismissing the underlying

---

[6]    A copy of the Chem-Met decision is attached to Plaintiff's Petition to Vacate Arbitration Award.

arbitration on summary judgment without providing for an evidentiary hearing, the reasoning and holding of <u>Chem-Met</u> apply with equal force here.

Although DMC labors to distinguish <u>Chem-Met</u> by suggesting that the AAA Rules of Arbitration are now "substantively different than the Rules [therein] at issue," (<u>see</u> DMC's Memorandum of Law In Opposition To Vacate Arbitration Award, pp. 19-20), this argument is made out of whole cloth.  To begin with, DMC's contention that the current Rules related to the "Conduct of Proceedings" are now "substantively different" is flat out wrong.  Old Rule 29, as referenced in the <u>Chem-Met</u> decision, provides arbitrators with discretion to structure the procedures of an evidentiary hearing provided that the arbitrator affords "a full and fair opportunity to all parties for the presentation of any material and relevant evidence." <u>Id</u>. at p. 5.  Similarly, current Rule 31 also gives arbitrators discretion to vary the procedure associated with the presentation of evidence provided that "each party has the right to be heard and is given a fair opportunity to present its case."  Indeed, despite the fact the Rules are worded differently, the concept remains the same in both Rules – that each party must be given the opportunity not only to be heard, but to **present its case** through the introduction of evidence.[7]

---

[7]     The fallacy of DMC's argument is further demonstrated by the fact that current Rule 31(c) enables the parties, but not the arbitrators, to waive evidentiary hearings.

In a further attempt to unlawfully prevent Sherrock from presenting its case on the merits, DMC relies upon a variety of non-controlling and factually inapposite decisions from other courts.  First, DMC relies heavily on the Tenth Circuit's decisions in <u>Sheldon v. Vermonty</u>, 269 F.3d 1202 (10th Cir. 2001) and <u>Vento v. Quick & Reilly, Inc.</u>, 128 Fed. Appx. 719 (10th Cir. 2005), each of which confirmed a NASD arbitration panel's grant of a motion to dismiss under the NASD procedural rules of arbitration.  (<u>See</u> DMC's Memorandum of Law In Opposition To Vacate Arbitration Award, p. 20 n.11).  DMC's reliance on <u>Sheldon</u> and <u>Vento</u> is misplaced for multiple reasons.

To begin with, the holding and reasoning espoused by the Tenth Circuit in these cases is directly at odds with the precedent of this Circuit, as well as the many other Circuit and district courts referenced herein.  As demonstrated above, the Third Circuit – and the cases relied upon by the Third Circuit – clearly establish that parties in commercial arbitration cases must be provided with an opportunity to be heard and an opportunity to present evidence at a hearing on the merits of the dispute.  Moreover, <u>Sheldon</u> and <u>Vento</u> were decided under the NASD procedural arbitration rules as opposed to the AAA Rules of Commercial Arbitration at issue herein.  Unlike the NASD rules, the AAA Rules, as alluded to above, have specific provisions which compel an evidentiary hearing absent waiver by the parties.

Next, DMC cites to <u>Commercial Refrigeration, Inc. v. Layton Constr. Co.</u>, 319 F. Supp.2d 1267 (D. Utah 2004), wherein the Court, according to DMC, allegedly made reference to a arbitrator's grant of summary judgment.  (<u>See</u> DMC's Memorandum of Law In Opposition To Vacate Arbitration Award, p. 20 n.11.)  That case, however, made no such reference.  In fact, the Court specifically noted that summary judgment was rejected by the arbitrator.  DMC should have read this decision before relying upon it for such a faulty premise.[8]

DMC also repeatedly cites <u>Hotels Condado Beach, La Concha & Convention Ctr. v. Union De Tronsquistas Local 901</u>, 763 F.2d 34 (1st Cir. 1985) for the propositions that "[a]n arbitrator enjoys wide latitude in conducting an arbitration hearing," and that an arbitration award is not subject to being vacated when an arbitrator refuses to hear cumulative or irrelevant evidence.  (<u>See</u> Defendant's Memorandum of Law In Opposition To Vacate Arbitration Award, p. 21 n.11, 23, 24).  DMC once again wrongfully equates an arbitrator's ability to limit or exclude evidence with an arbitrator's ability to dispense with an evidentiary hearing altogether.  DMC's error in this regard is surprising, however, given the fact that <u>Hotels Condado Beach</u> specifically amplifies this distinction as follows:

---

[8]     Moreover, even though the arbitrator in <u>Commercial Refrigerator</u> may have entertained a motion for summary judgment, there is no indication in that decision as to whether that the underlying arbitration was conducted according to the AAA Rules of Commercial Arbitration.

> The arbitrator is the judge of the admissibility and relevancy of the evidence submitted in an arbitration proceeding. . . . The arbitrator is not bound to hear **all** of the evidence tendered by the parties; however, he **must** give each of the parties to the dispute an adequate opportunity **to present its evidence** and arguments.

Id. at 39 (alteration and emphasis added) (citations omitted).  See also Kiewit v. International Brotherhood of Electrical Workers, Local 103, 76 F. Supp.2d 77, 80-81 (D. Mass. 1999).  Had DMC read this decision more closely as well, it would have realized that Hotels Condado Beach actually supports Sherrock's contention that it was wrongfully deprived of the right to an evidentiary hearing on the merits.[9]

Indeed, relying upon Hotels Condado Beach, the Seventh Circuit adopted and elaborated upon these same basic fairness requirements in arbitration proceedings in Generica, Ltd. v. Pharmaceutical Basics, Inc, 125 F.3d 1123 (7th Cir. 1997), wherein the Court stressed that:

> It is clear that an arbitrator must provide a fundamentally fair hearing. . . .  A fundamentally fair hearing is one that "meets 'the minimal requirements of fairness' – adequate

---

[9]    DMC also relies on the following cases for the same proposition regarding the discretion afforded an arbitrator pertaining to the presentation of evidence: Local Union No. 251 v. Narragansett Improvement Co., 503 F.2d 309 (1st Cir. 1974); Ballantine Books, Inc. v. Capital Distrib. Co., 302 F.2d 17 (2d Cir. 1962); International Union v. Kraft Foods, 409 F. Supp. 559 (E.D. Pa. 1976); and M & L Power Services, Inc. v. American Networks International, 44 F. Supp.2d 134 (D. R.I. 1999).  DMC's reliance on these cases is misplaced for the same reasons as those articulated above.  Moreover, in each of these cases, the plaintiffs were in fact afforded a right to an evidentiary hearing on the merits of their claims.

> notice, **a hearing on the evidence**, and an impartial
> decision by the arbitrator."

Id. at 1130 (emphasis added) (citing, inter alia, Hotels Condado Beach, 763 F.2d at

40).

Significantly, the foregoing precedent completely undercuts DMC's self-

serving contention in its opposition papers that "fundamental fairness" does not

require "an evidentiary hearing in arbitrations."   (See DMC's Memorandum of

Law In Opposition To Vacate Arbitration Award, pp. 20 n.10, 21).   Accordingly,

because it is undisputed that the Arbitration Panel did not afford Sherrock with the

minimal fairness requirement of a hearing on the evidence, its award granting

summary judgment in favor of DMC must be vacated.

**B.   The Panel Committed a Manifest Disregard for the Law in Finding that Sherrock Waived its Right to Arbitration**

In the event the Court agrees with Sherrock's argument that the Panel

abused and exceeded its powers by depriving Sherrock of its rights to discovery

and an evidentiary hearing on the merits, a review of the substantive findings of the

Panel is unnecessary.   Nevertheless, out of an abundance of caution, these findings

are challenged below insofar as the Panel clearly committed a manifest disregard

for the law in each instance. [10]

---

[10]   DMC's conclusory assertion that Sherrock is not permitted to raise
"manifest disregard of law" as a basis to vacate the arbitration award under the

While recognizing that there is a presumption <u>against</u> waiver of a contractual right to arbitration, and that DMC bore a "heavy burden" of proving waiver by clear and convincing evidence, the Arbitration Panel nevertheless concluded that Sherrock waived its right to pursue arbitration when it "elected to pursue its remedies by litigating against DMC before the Board on the issue of the validity of the voluntary termination." (Appendix Exhibit 30 at pp. 6-7.) This finding constituted a clear and manifest disregard of the law.

"Waiver is a voluntary and intentional abandonment or relinquishment of a known right." <u>Tunnell-Spangler & Associates, Inc. v. Katz et al.</u>, 2003 Phila. Ct. Com. Pl. LEXIS 79 (2003) <u>citing</u> <u>Marranca General Contracting Co., Inc. v. Amerimar Cherry Hill Associates Ltd. Partnership</u>, 610 A.2d 499 (Pa. Super. 1992). "Waiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." <u>Id</u>.

"The key to determining whether arbitration has been waived is whether the party, by virtue of its conduct, has accepted the judicial process." <u>Tunnell-</u>

---

FAA warrants little attention. In <u>Roadway Package System, Inc. v. Kayser</u>, 257 F.3d 287, 291 n.2 (3d Cir. 2001) – the very case relied upon by DMC as support for its position – the Third Circuit specifically identifies the "manifest disregard for the law" standard as an additional basis "upon which a reviewing court may vacate an arbitrator's award **under the FAA**."

Spangler & Associates, Inc., supra, (citing St. Clair Area School Dist. Bd. of Ed. v. E.I. Associates, 733 A.2d 677, 682 n.6 (Pa. Commw. 1990).)  Acceptance of the judicial process is demonstrated when the party:

    (1)    fails to raise the issue of arbitration promptly;

    (2)    engages in discovery;

    (3)    files pretrial motions which do not raise the issue of arbitration;

    (4)    waits for adverse rulings on pretrial motions before asserting arbitration; or

    (5)    waits until the case is ready for trial before asserting arbitration.

Id.

Here, Sherrock never "accepted the judicial process."  Instead, it filed an action before a state administrative entity tasked with adjudicating the termination of franchises such as the one at issue here.  The fact that Sherrock appealed the Board's decision to the Commonwealth Court does not mean that it "accepted the judicial process."  Indeed, even if the Commonwealth Court's limited appellate review of the Board's Order can be considered "accepting the judicial process," Sherrock's conduct does not amount to any of the factors outlined above.

Although the foregoing legal authorities were brought to the Panel's attention, (see Sherrock's Brief in Opposition to DMC's Summary Judgment Motion, attached as part of Appendix Exhibit 29, at p. 6), neither these authorities

nor the waiver factors they espoused were even mentioned in the Panel's decision.

(Appendix Exhibit 30 at pp. 6-8.)   The Panel also completely disregarded the

following irrefutable facts:

> (1)   Sherrock raised the issue of arbitration immediately after withdrawing (without prejudice) its state court action and exhausting its administrative proceedings before the Board;

> (2)   Sherrock not only <u>never</u> engaged in discovery in the proceedings before the Board but, indeed, was never even permitted an opportunity to do so;

> (3)   Sherrock never filed <u>any</u> pretrial motions into the pre-arbitration protective proceedings, let alone any pretrial motions which failed to raise the issue of arbitration;

> (4)   Because Sherrock never filed any pretrial motions it obviously did not wait, and could not have waited, for an adverse ruling on said motions before raising the issue of arbitration; and

> (5)   Finally, Sherrock did not wait until this case was ready for trial before pursuing arbitration.   Indeed, Sherrock, regrettably, was never anywhere close to having its day in Court.

Based upon Sherrock's conduct and the limited nature of its administrative

proceedings, it is clear that Sherrock did not waive arbitration.

The Panel also completely disregarded Pennsylvania law, also cited by

Sherrock, which confirms that a party has a right to seek preliminary relief prior to

pursuing arbitration.   <u>See</u> <u>Langston v. National Media Corp.</u>, 617 A.2d 354, 356

(Pa. Super. 1992), wherein the Court observed:

> "Looking to federal authorities for guidance . . . we find that it is precisely this underlying recognition of the purpose for and necessity of arbitration which has influenced the federal circuit courts in finding authority in the federal district courts to issue injunctive relief prior to the determination of the arbitrability of the underlying dispute.  Without such authority, the federal courts have concluded, the utility of arbitration as a vehicle for dispute resolution would be ultimately rendered asunder, as the underlying controversy is rendered moot."

Similarly, in Teradyne v. Mostek Corp., 797 F.2d 43 (1st Cir. 1986), the

Court explained:

> [T]his approach reinforces rather than detracts from the policy of the Arbitration Act. . . . We believe that the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, ipso facto, the meaningfulness of the arbitration process. . . Indeed, the Court concluded that arbitration would become a "hollow formality" if parties were able to irretrievably alter the status quo pending the outcome of the underlying dispute.

Id. (emphasis added) (internal citations omitted).

Likewise, in Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806 (3d

Cir. 1989), the Third Circuit fell into line with the overwhelming majority of the

federal circuits in concluding that a district court possessed the authority to grant

injunctive relief in an arbitrable dispute.   The Court reasoned that because

arbitration agreements generally reflected the parties' intention to abide by an

orderly process of dispute resolution, it would be error to "construe such an

agreement as constituting a 'waiver' by either party of the right to seek preliminary

injunctive relief necessary to prevent one party from eviscerating the significance of the agreed-upon procedures." Id. at 812; see also Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1051-54 (2d Cir. 1990); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1052-54 (4th Cir. 1985); Sauer-Getriebe KG v. White Hydraulics, Inc., 715 F.2d 348 (7th Cir. 1983), cert. denied, 464 U.S. 1070; PMC Distributing Co., Inc. v. Huber & Suhner, A.G., 854 F.2d 355, 358 (9th Cir. 1988).

In the matter sub judice, DMC started the administrative process by notifying the Board that it was terminating the Sherrock Franchise. Sherrock, in an attempt to prevent that from happening, exercised its administrative rights under 63 P.S. § 818.13(d) by filing a Petition which, contrary to DMC's erroneous suggestions, did in fact seek interim preliminary relief in the form of a stay of DMC's notice of termination of the Sherrock Dodge Dealer Agreement. (See Appendix Exhibit 21 at p. 5.) The fact that Sherrock did not specify in its papers filed with the Board and, subsequently, the Commonwealth Court that it would also be exercising its rights to arbitration under the Dealership Agreement does not in any way change the equation. Although the Panel may have been willing to disregard the foregoing legal authorities and factual realities of this case, this Court should not and must not do so.

### C.    The Panel Also Committed a Manifest Disregard for the Law in Finding That Sherrock's Claims Were Barred by the Doctrines of Collateral Estoppel and/or Res Judicata

It is well settled that for the doctrine of res judicata to prevail there must be a concurrence of four conditions: (1) identity of issues; (2) identity of causes of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued.  Safeguard Mutual Ins. Co. v. Williams et al., 463 Pa. 567, 574-75 (1975) (citing Bearoff v. Bearoff Brothers, Inc., 327 A.2d 72 (Pa. 1974); Stevenson v. Silverman, 417 Pa. 187 (1965), cert. denied, 382 U.S. 833 (1965).)

Likewise, the doctrine of collateral estoppel applies where the following four prongs are met:  (1) an issue decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.  Rue v. K-Mart Corp., 713 A.2d 82, 84 (Pa. 1998) (citing Shaffer v. Smith, 673 A.2d 872 (Pa. 1996); Safeguard Mutual Ins. Co. v. Williams, 345 A.2d 664 (Pa. 1975).) [11]

---

[11]    While the Dealer Agreement does not have a clear choice of law provision, the parties cited to the substantive law of Pennsylvania on the issues of res judicata

Although the Panel referenced the above required elements under the doctrines of res judicata and collateral estoppel, it completely and intentionally failed to apply those elements to the facts of this case.  Indeed, its quest to find an identity of issues – where no such identity exists – the Panel opined:

> "First, the Board did find that the termination was voluntary on the part of [Sherrock].  That is the precise finding [Sherrock] is now contesting in this arbitration.  If the actions of corporate officers were void ab initio, then such actions could not be voluntary."

(Appendix Exhibit 30 at p. 6.)  As noted above, however, the Board specifically declined to address the ultimate issue of whether the November 11, 2002 termination letter was void ab initio as a matter of corporate law because it lacked the authority or expertise to entertain that issue.  (Appendix Exhibit 23 at p. 6.) The same holds true with respect to the ultra vires and bad faith arguments, which the Panel also said were the same as those presented to the Board but which the Board passed on as well.  (Id.)

### 1.    The Issues Decided by the Board Were Not The Same as Those Submitted to Arbitration

The issues ultimately decided in the action before the Board were not identical to those presented in Sherrock's arbitration.  Indeed, the Board only decided the very narrow issue of whether DMC's termination of the Dealer

---

and collateral estoppel and the Panel accepted that law as controlling.  (See Appendix Exhibit 23 at p. 5.)

Contract violated Section 13 of the Act.   To this end, the Board held that a "voluntary termination" of a dealership is beyond the subject matter jurisdiction of Section 13 of the Act, and therefore beyond the Board's purview.   (Appendix Exhibit 23 at pp. 5-6:   "Section 13 does not address the voluntary surrender of a franchise by a dealer.")[12]

Although the Board stated that it found Sherrock's termination to be voluntary, it did so without considering corporate law, contract law or the laws of agency.   Indeed, the Board stated "[t]o the extent that the actions of Dealership's officers might have been in violation of corporate law in voluntarily surrendering its franchise with [DMC] without [Rinaldi's] knowledge or agreement, the Board has neither the authority nor the expertise to address such claims.   Any remedy [Rinaldi] may have against these officers is to be found in the courts, and not before the Board."   Id. at p. 6 (emphasis added) (internal footnotes omitted).

In other words, the Board specifically left the resolution of Sherrock's claims under corporate and/or contract law to be decided by another tribunal. Thus, the Board – which, despite the mandates of § 818.13(d), never held a fact-finding hearing on the matters in dispute – never addressed the core issue of whether Ted Sherrock's termination letter was authorized by, legally binding upon

---

[12]      Section 13 of the Act provides:   "[i]t shall be a violation of this act for any manufacturer or distributor . . . to unfairly, without due regard to the equities of said dealer and without just cause, terminate or fail to renew the franchise of any vehicle dealer. . . ."   63 P.S. § 818.13(a).

and/or effective with respect to the Sherrock corporation and also never addressed whether DMC could legally and reasonably rely and act upon Ted Sherrock's letter in light of, inter alia, DMC's explicit knowledge of Rinaldi's stockholder interest and prior dealings with him on behalf of Sherrock.

Sherrock's arbitration demand, however, sought resolution of, inter alia, these very issues.  (See Appendix Exhibit 27.)  Because the Board specifically declined to address these issues under agency, corporate and contract law, it is clear that the Panel committed a manifest disregard for the law and facts of this case in finding otherwise.

> **2.**     **Sherrock Did Not Have an Opportunity to "Fully Litigate" Its Claims Before the Board or the Commonwealth Court**

DMC argues that the Commonwealth Court specifically found that "[u]nder corporation and agency law, [DMC] could conclude the officers' letter constituted a voluntary termination of the Dealer Agreement."  The point DMC ignores or overlooks, however, is that the Commonwealth Court also recognized that these issues, which were clearly presented to the Arbitration Panel, were not fully litigated before the Board or the Court, stating "Rinaldi's recourse [regarding said issues] is in court under agency and corporate law."  (Id. at p. 6.)

Although the Commonwealth Court commented, in dicta, on whether the termination was voluntary under contract or corporate law, such dicta cannot be

construed as being the equivalent of a "full and fair opportunity to litigate" the issue. Rinaldi has never had an opportunity to develop his claims through discovery and has never had the opportunity to cross examine DMC's agents, representatives and co-conspirators.

## III.   <u>CONCLUSION</u>

For any or all of the foregoing reasons, Sherrock respectfully requests that its Petition to Vacate be granted, that DMC's Cross-Petition to Confirm be denied, and that the matter be remanded to a new, duly constituted panel of AAA commercial arbitrators to proceed with an evidentiary hearing and ruling on the merits in accordance with the AAA Rules of Commercial Arbitration.

Respectfully submitted,


/s/ Kevin C. Quinn
Kevin C. Quinn
Pa. I.D. No. 53625
Frank J. Tunis, Jr.
Pa. I.D. No. 84264
**WRIGHT & REIHNER, P.C.**
148 Adams Avenue
Scranton, Pennsylvania 18503
(570) 961-1166
(570) 961-1199 - fax

DATED:    May 5, 2006

## <u>CERTIFICATE OF SERVICE</u>

I, KEVIN C. QUINN, hereby certify that I have caused to be served this day a true and correct copy of the foregoing Omnibus Reply Brief in response to Respondent's Cross-Petition to Confirm Arbitration Award and Memorandum of Law in Opposition to Petition to Vacate Award upon counsel of record via electronic filing as follows:

Gerald Burns, Esq.
Suzanne Sweeney, Esq.
Klett Rooney Lieber & Schorling, P.C.
Two Logan Square – 12th Floor
Philadelphia, PA  19103-2756

/s/ Kevin C. Quinn
Kevin C. Quinn

DATED:  May 5, 2006