**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SHERROCK BROTHERS, INC.,

    Petitioner,

      v.

DAIMLERCHRYSLER MOTORS
COMPANY LLC,

    Respondent.

CIVIL ACTION NO. 06-CV-351

(JUDGE CAPUTO)

**<u>MEMORANDUM</u>**

Presently before the Court is Sherrock Brothers, Inc.'s (Petitioner) Petition to

Vacate Arbitration Award and Remand to Arbitration. (Doc. 1-1.)  Also before the Court is

DaimlerChrysler Motors Company LLC's (Respondent) Cross-Petition to Confirm

Arbitration Award. (Doc. 11-1.)  For the reasons set forth below, the Court will deny

Petitioner's Petition to Vacate Arbitration Award and grant Respondent's Cross-Petition to

Confirm Arbitration Award.  The Court has jurisdiction over this matter pursuant to the

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., as well as 28 U.S.C. § 1332(a).

**BACKGROUND**

The factual and procedural history of this matter, as described by the American

Arbitration Association Panel ("Panel") in its Arbitration Award (Resp.'s Ex. 2), is as

follows.  On October 22, 2003, Petitioner filed a Demand for Arbitration ("Demand") with

the American Arbitration Association ("AAA").  In Petitioner's Demand, Petitioner disputed

the validity of the termination of its dealership agreement with Respondent, which

occurred on December 12, 2002.  Prior to the termination, Petitioner was an authorized

1

Dodge dealer in Hazelton, Pennsylvania.  In response to the termination of its dealership, on December 23, 2002, Robert V. Rinaldi ("Rinaldi"), in the name and on behalf of Petitioner, instituted a petition against Respondent before the State Board of Motor Vehicle Manufacturers, Dealers, and Sales Persons for the Commonwealth of Pennsylvania ("Board").  In the petition, Petitioner alleged that: (1) Rinaldi had acquired all of its voting stock; (2) Respondent had been advised in writing of Rinaldi's stock ownership; (3) Rinaldi injected additional capital into Petitioner; (4) on November 11, 2002, Theodore and Edward Sherrock ("the Sherrocks"), as officers of Petitioner, informed Respondent by letter that Petitioner intended to voluntarily terminate its Dodge dealership agreement with Respondent; (5) the letter of voluntary termination was "*ultra vires*, unauthorized, ineffective, unlawful and legally void *ab initio* . . ."; and (6) Respondent had notified Petitioner that the voluntary termination would become effective December 12, 2002.

On June 13, 2003, the Board issued an order dismissing Petitioner's petition.  The Board ruled that Petitioner was not entitled to relief under the Board of Vehicles Act ("BVA"), 63 PA. CONS. STAT. § 818.1 *et seq.*, because Petitioner's dealership was voluntarily surrendered by the dealer, and not unfairly terminated by the manufacturer. 63 PA. CONS. STAT. § 818.13 (providing that "[i]t shall be a violation of this act for any manufacturer or distributor, officer, agent or any representative whatsoever to unfairly, without due regard to the equities of said dealer and without just cause, terminate or fail to renew the franchise of any vehicle dealer").  The Board noted that it was without the authority and the expertise to address the issue of the alleged *ultra vires* nature of the actions of the Sherrocks, Petitioner's corporate officers, instead stating that Petitioner's

2

proper avenue for relief was a court action against the Sherrocks themselves.  The Board denied Petitioner's motion for reconsideration on July 15, 2003.

Rinaldi, again on behalf of Petitioner, filed a Petition for Review with the Commonwealth Court of Pennsylvania averring, inter alia, that "[n]otwithstanding its knowledge of Rinaldi's equity position, its prior dealings with him, and without any inquiry and/or evidence of proper corporate authorization by its dealer . . . [Respondent] accepted Ted Sherrock's letter [of intent to terminate the dealership agreement] and advised the Board of Vehicles by letter dated December 12, 2002, that it was immediately terminating the Sherrock Dodge dealer Agreement."  Rinaldi again alleged that the voluntary termination was "legally ineffective, *ultra vires*, improper, unlawful and void *ab initio*."  Rinaldi further argued that Respondent could not legally rely, nor act for that matter, upon Ted Sherrock's termination letter based upon the facts and circumstances as pleaded by Rinaldi in his Petition for Review, particularly the alleged facts concerning Respondent's knowledge of Rinaldi's equity position and Rinaldi's prior dealings with Respondent.  On January 8, 2004, the Commonwealth Court issued an opinion affirming the Board's decision as not clearly erroneous. *Rinaldi v. Bd. of Vehicle Mfrs.*, 843 A.2d 418 (Pa. Commw. Ct. 2004) (Simpson., J.).  Specifically, the Commonwealth Court held that section 13 of the BVA "applies only when the manufacturer terminates a franchise 'unfairly, without due regard to the equities of said dealer and without just cause.'" *Id.* at 421.  The Commonwealth Court also upheld, as supported by sufficient evidence in the record, the Board's factual finding of a voluntary franchise surrender. *Id.*  The Commonwealth Court observed that Rinaldi admitted the Sherrocks were corporate officers, and, based on corporation and agency law, Respondent was entitled to rely

3

upon the representations made by the Sherrocks and conclude that their letter constituted a voluntary termination of the franchise. *Id.*  The Commonwealth Court concluded that "[b]ecause [Respondent] knew of limitations on Rinaldi's authority but did not know of limitations on the authority of Dealership officers, there is nothing in the record to preclude summary relief founded on apparent authority." *Id.*  On February 26, 2004, Rinaldi's application for reargument/reconsideration before the Commonwealth Court *en banc* was denied.

On March 29, 2004, Rinaldi, again on behalf of Petitioner, petitioned the Supreme Court of Pennsylvania for an Allowance of Appeal.  Rinaldi argued the same issues of lack of corporate authority on the part of the Sherrocks and lack of good faith on the part of Respondent as he had before the Board and the Commonwealth Court.  On August 5, 2004, the Supreme Court of Pennsylvania denied Rinaldi's petition.

Collateral to the proceedings before the Board and the Commonwealth Court, on or about October 1, 2003, Rinaldi also instituted an Action in Equity in the Court of Common Pleas of Luzerne County, Pennsylvania, seeking declaratory and injunctive relief against the Sherrocks and Respondent.  On October 17, 2003, Rinaldi caused this action to be discontinued without prejudice as to all Defendants.

In none of the proceedings before the Board, the Commonwealth Court, the Supreme Court of Pennsylvania, or the Court of Common Pleas, Luzerne County, did Rinaldi or Petitioner ever claim that they had a right to arbitrate under the provisions of the dealership agreement.

4

Before the AAA Panel, composed of three (3) arbitrators, Respondent moved for summary judgment on the grounds of res judicata and collateral estoppel, asserting that the adjudications by the Board, the Commonwealth Court, and the Supreme Court of Pennsylvania precluded the Panel from reaching the merits of this dispute.  Respondent alternatively argued that, by choosing the Board and Pennsylvania Appellate Courts as its forums, Rinaldi and Petitioner waived their contractual right to arbitration.  Conversely, Petitioner argued that the doctrines of res judicata and collateral estoppel did not apply because of (1) a lack of identity of the claims and issues; and (2) either a lack of a decision on the merits or an inability to fully and fairly litigate the claim or issue on the merits.  Petitioner contended that the Board and the Pennsylvania Appellate Courts never reached the issues of the *ultra vires* nature of Sherrock's termination letter, nor the alleged bad faith on the part of Respondent in accepting and relying on the unauthorized letter in terminating the dealership agreement while allegedly knowing of Rinaldi's ownership interest and after allegedly having dealt with him on prior occasions.

On November 18, 2005, the Panel, by a two (2) to one (1) vote, issued its Arbitration Award, granting summary judgment in favor of Respondent.  The Panel held that the doctrines of res judicata, collateral estoppel and waiver all precluded the Panel from deciding the merits of Petitioner's Demand.

As to the application of the doctrines of res judicata and collateral estoppel, the Panel reasoned, first, that, in holding that the termination of the dealership agreement was a voluntary surrender, the Board necessarily found, counter to Petitioner's contention, that the action of the Sherrocks, as corporate officers, was not void *ab initio*. The Panel next found that Rinaldi and Petitioner presented the same *ultra vires* and bad

faith arguments to the Board as contained in the Demand, and that the Commonwealth Court "specifically dealt with the *ultra vires* and bad faith contentions in regard to [Petitioner's] assertion that those concepts negate[d] the Board's finding that the termination was voluntary."  The Panel also observed that the Supreme Court of Pennsylvania "denied allowance of an appeal on the same grounds that are advanced in this arbitration."  Consequently, the Panel expressly held "that the Commonwealth Court adjudicated on the merits the exact claims [Petitioner] now wishes to pursue before us." The Panel specifically rejected Petitioner's argument that it did not have a full and fair opportunity to litigate its *ultra vires* and bad faith contentions before the Board and Commonwealth Court, noting that the Commonwealth Court considered and rejected it.

The Panel also found, by clear and convincing evidence, that Rinaldi and Petitioner waived the contractual right to arbitration in "seeking relief through its Petition to the Board and subsequent Appellate Court review" and "never reserv[ing] its right to arbitrate in its Petitions to the Board and the Appellate Courts."  The Panel concluded that it would not permit Petitioner "to utilize the Board process and then retreat to arbitration if it loses."

Lastly, the Panel addressed the issue of whether summary judgment was an appropriate remedy in the context of this arbitration.  The Panel reasoned that, because it was ruling on the grounds of res judicata, collateral estoppel and waiver, no factual issues were present to necessitate an evidentiary hearing.  Therefore, the Panel concluded, summary judgment was an acceptable means of disposing of the demand.

The dissenting arbitrator argued that Petitioner was never afforded a full and fair opportunity to litigate, nor was even afforded an evidentiary hearing on, its claims concerning the *ultra vires* nature of the Sherrocks' action and bad faith on the part of

Respondent.  Indeed, the dissent asserted that the Board "summarily determined" that it had no jurisdiction to hear Petitioner's claims "because there was no 'adversarial notice of termination' in the limited record before it."  And in the dissent's view, the Commonwealth Court "simply affirmed the Board's determination that it had no jurisdiction," with the portion of the court's opinion devoted to the issue of voluntary surrender being mere dicta.

On February 16, 2006, Petitioner filed with this Court its Petition to Vacate the Arbitration Award. (Doc. 1-1.)  On March 31, 2006, Respondent filed a Cross-Petition to Confirm the Arbitration Award. (Doc. 11-1.)  Briefs and exhibits were submitted by both parties and oral argument was conducted.  Consequently, these petitions are ripe for disposition.

## DISCUSSION

### I. Petitioner's Contentions

Petitioner now asks this Court to vacate the arbitration award entered in favor of Respondent.  Petitioner presents three arguments it believes support vacatur of the award: (1) the Panel majority committed a manifest disregard of the law in finding that Petitioner's *ultra vires* and bad faith claims were precluded pursuant to the doctrines of res judicata, collateral estoppel and waiver; (2) the Panel majority exceeded their powers, in violation of 9 U.S.C. § 10(a)(4), in using the procedure of summary judgment to dispose of Petitioner's arbitration demand; (3) the Panel majority is guilty of misconduct, under 9 U.S.C. § 10(a)(3), because its use of the procedure of summary judgment amounted to a refusal to hear evidence pertinent and material to the controversy.

## II. Standard of Review – Generally

Under the FAA, a federal district court may vacate an arbitration award in the following circumstances:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  In addition, vacatur is generally permitted when an arbitration award is the result of a manifest disregard of the law. *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003).  However, "judicial review of an arbitration award is extremely narrow and severely limited."  *Jeffrey M. Brown Assocs., Inc., v. Allstar Drywall & Acoustics, Inc.*, 195 F. Supp. 2d 681, 684 (E.D. Pa. 2002).  Indeed, when reviewing an arbitration award, courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of Am.*, 896 F.2d 745, 747 (3d Cir. 1990).

## III. Manifest Disregard of the Law – Non-statutory

### A. Standard of Review

A district court may vacate an arbitration award when the award is the result of a "manifest disregard of the law." *Dluhos*, 321 F.3d at 370.  However, a court may not overrule an arbitration panel simply because it disagrees with its decision. *See News Am. Publ'ns, Inc. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990). Rather, "manifest disregard of the law" means "more than error or misunderstanding with

respect to the law." *Jeffrey M. Brown Assocs.*, 195 F. Supp. 2d at 684; *Tanoma Mining*, 896 F.2d at 749 ("an award may not be vacated merely because the arbitrator made an error of law").  Indeed, "'manifest disregard of the law' encompasses situations in which it is evident from the record that the arbitrator recognized the applicable law, yet chose to ignore it." *Jeffrey M. Brown Assocs.*, 195 F. Supp. 2d at 684.  Other courts in the Third Circuit have gone even further, holding that an arbitration award may only be vacated as a manifest disregard of the law when "the correct legal standard . . . [was] so obvious that the typical arbitrator would readily and instantly have perceived it, the arbitrator must have been subjectively aware of that standard, and he must have proceeded to ignore that standard in fashioning the award." *Id.* at 685 (citing *Coltec Indus., Inc. v. Elliott Turbocharger Group, Inc.*, Nos. Civ. A. 99-1400, 99-MC-36, 1999 WL 695870, at *5 (E.D. Pa. Sept. 9, 1999)).  Accordingly, so long as the arbitration award is arguably correct, it must be enforced, "regardless of the fact that a court is convinced that the arbitrator has committed a serious error." *Jeffrey M. Brown Assocs.,* 195 F. Supp. 2d at 685 (citing *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995)).  "To adopt a less strict standard of judicial review would be to undermine our well established deference to arbitration as a favored method of settling disputes when agreed to by the parties." *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 265 (2d Cir. 1989) (citing *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960)).

### B. Analysis

Petitioner argues that the Panel majority manifestly disregarded the law in finding that Petitioner's *ultra vires* and bad faith claims were precluded under the doctrines of res

judicata, collateral estoppel and waiver.  The Court disagrees.[1]

### 1. Res Judicata and Collateral Estoppel

Whether preclusive effect is to be given to the prior decisions of the Board and Commonwealth Court was a matter for the arbitrators to decide. *Beck v. Reliance Steel Prods. Co.*, 860 F.2d 576, 581 (3d Cir. 1988) (arbitrator can decide what preclusive effect is to be given to a prior judicial action); *Rd. Sprinkler Fitters Union Local 699 v. Grinnell Fire Prot. Sys. Co.*, No. Civ. A. 94-CV-2905, 1997 U.S. Dist. LEXIS 1543, at *6 (E.D. Pa. Feb. 18, 1997) (preclusive effect of a prior administrative decision is an issue for the arbitrators to determine) (citing *United Steel Workers of Am. v. Black Top Paving Co.*, No. Civ. A. 88-2396, 1990 U.S. Dist. LEXIS 19949, *16 (W.D. Pa. Apr. 12, 1990), *aff'd*, 932 F.2d 962 (3d Cir. 1991)).  As such, the Panel was correct in considering, as a threshold question of arbitrability, whether Petitioner's *ultra vires* and bad faith claims were precluded by the prior decisions of the Board and Commonwealth Court.

The Panel cited the proper rules of law as to the doctrines of res judicata and collateral estoppel.[2]  The Panel majority then addressed Petitioner's two arguments for

---

[1]Because the Court concludes that the Panel majority's decision was not in manifest disregard of the law, the Court need not address Respondent's argument that the dealership agreement limits judicial review to only those grounds contained in 9 U.S.C. §§ 10 and 11.

[2]The Panel noted that, for the doctrine of res judicata, or claim preclusion, to apply, four elements must be met: (1) identity of issues; (2) identity of causes of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. *See Safeguard Mut. Ins. Co. v. Williams et al.*, 463 Pa. 567, 574-75 (1975). The Panel also set forth the proper elements that must be established for the doctrine of collateral estoppel, or issue preclusion, to apply: (1) an issue decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom

why these doctrines did not apply to preclude its claims – that, first, there was a lack of identity of claims and issues, and, second, there was no decision on the merits or there was not a full and fair opportunity to litigate the merits.  The Panel majority rejected both arguments, finding "that the Commonwealth Court adjudicated on the merits the exact claims [Petitioner] now wishes to pursue before us," and that Petitioner had a full and fair opportunity to litigate its *ultra vires* and bad faith claims before the Board and the Commonwealth Court.  The Panel majority, therefore, concluded that the doctrines of res judicata and collateral estoppel barred Petitioner's claims.

Here, Petitioner merely contests the Panel majority's analysis on the elements of res judicata and collateral estoppel. (Petr.'s Br. 20-24.)  Petitioner nowhere argues that the Panel majority "recognized the applicable law, yet chose to ignore it." *See Jeffrey M. Brown Assocs.*, 195 F. Supp. 2d at 684.  Rather, Petitioner simply argues that the Panel majority committed legal error in holding that there was an identity of claims and issues and that Petitioner had a full and fair opportunity to litigate the merits of its claims.

As the Panel majority considered and applied the prevailing rules of law on the doctrines of res judicata and collateral estoppel, the Court is of the opinion that there was no manifest disregard of the law.  Furthermore, the Panel majority's analysis and conclusion as to the application of the doctrines of res judicata and collateral estoppel is well supported.  First, the Board expressly found that the dealership was "voluntarily surrendered." (Resp.'s Ex. 8 at 2, ¶ 8.)  This finding was necessary to the Board's holding that Petitioner was not entitled to relief for an involuntary termination under

collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *See Rue v. K-Mart Corp.*, 552 Pa. 13, 17 (1998).

section 13 of the BVA.  The Board also expressly found that Petitioner "had notice and an opportunity to be heard on all issues in this matter." (Resp.'s Ex. 8 at 3, ¶ 11.)  The Commonwealth Court then affirmed the Board's factual finding of a voluntary surrender and rejected Petitioner's *ultra vires* and bad faith claims because Petitioner did not offer to prove that Respondent knew of any limitations on the Sherrocks' authority to act for Petitioner. *Rinaldi*, 843 A.2d at 421.  Based on this record, the Panel was arguably correct in holding that res judicata and collateral estoppel barred Petitioner's claims.

However, even if the Court were convinced that the Panel majority committed an error of law, vacatur would still not be appropriate.  A federal court does not review an arbitration award for legal error, *Exxon Shipping Co. v. Exxon Seaman's Union*, 73 F.3d 1287, 1295 (3d Cir. 1996) ("we do not review for legal error"), nor does a federal court vacate an arbitration award because an arbitral panel committed legal error. *Tanoma Mining*, 896 F.2d at 749 ("an award may not be vacated merely because the arbitrator made an error of law").  Accordingly, the Court holds that Panel majority did not manifestly disregard the law in concluding that res judicata and collateral estoppel precluded Petitioner's *ultra vires* and bad faith claims.

### 2. Waiver

Petitioner contends that the Panel majority committed a manifest disregard of the law in finding that Petitioner's *ultra vires* and bad faith claims were precluded pursuant to the doctrine of waiver.  The Court disagrees.[3]

---

[3]The Court rejects Petitioner's argument that the Panel manifestly disregarded the law in finding that Petitioner was seeking final relief when it proceeded before the Board and Commonwealth Court.  The Panel's conclusion that Petitioner sought a stay, not to preserve the status quo pending arbitration, but, rather, pending adjudication of the petition by the

Like it did concerning the issues of res judicata and collateral estoppel, the Panel majority identified and applied the prevailing legal principles on the doctrine of waiver.[4] The Panel majority then concluded that Petitioner clearly and convincingly waived its contractual right to arbitration because Petitioner sought "relief through its Petition to the Board and subsequent Appellate Court review" and "never reserved its right to arbitrate in its Petitions to the Board and the Appellate Courts." (Resp.'s Ex. 2 at 7.)  The Panel majority reasoned that Petitioner "cannot opt to use the Board as its forum, and after losing before the Board, and in successive appeals, seek relief in arbitration." *Id.*  The Court finds this reasoning – that Petitioner's seeking of remedies in another forum, without reserving the right to arbitrate, constituted clear and convincing evidence of waiver – arguably correct.  Accordingly, the Court holds that the Panel majority did not manifestly disregard the law in concluding that the doctrine of waiver precluded

---

Board, was arguably correct. (Resp.'s Ex. 6 at 5.)  The record shows that the Board entered an order staying the termination of the dealership pending its own adjudication on the merits of Petitioner's claims. (Resp.'s Ex. 11 at 4.)   Thus, the stay that was requested could arguably be viewed as not in aid of arbitration.  Waiver of the contractual right to arbitration was thus possible based on the proceedings before the Board and Commonwealth Court.

[4]"Waiver is the voluntary and intentional abandonment or relinquishment of a known right." *Zitelli v. Dermatology Educ. & Research Found.*, 597 A.2d 1173, 1184 (Pa. Super. 1991).  "Waiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Marranca Genh. Contracting Co., Inc. v. Amerimar Cherry Hill Assocs. Ltd. P'ship*, 610 A.2d 499, 501 (Pa. Super. 1992).  The Panel noted that there is a presumption against the waiver of a contractual right to arbitrate. *See Americal Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88 (4th Cir. 1996).  This presumption, the Panel explained, can only be overcome by clear and convincing evidence that Petitioner opted to seek relief in a different forum from arbitration.  Moreover, the Panel observed that Respondent must demonstrate prejudice. (Resp.'s Ex. 2 at 6.)

Petitioner's arbitration demand.[5]

## IV. Exceeded their Powers – 9 U.S.C. § 10(a)(4)

### A. Standard of Review

A district court may vacate an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4).  In conducting its review of an arbitration award, a court "must examine both the form of relief awarded by the arbitrator as well as the terms of that relief." *Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 56 (3d Cir. 1989).  A court "must determine if the form of the arbitrators' award can be rationally derived either from the agreement between the parties or from the parties['] submissions to the arbitrators." *Id.*  As to the terms of the award, a court must affirm the award unless they are "completely irrational." *Id.*  An arbitration award should be upheld if it "draws its essence" from the agreement because "the parties to the . . . agreement 'bargained for' a procedure in which an arbitrator would interpret the agreement." *Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*, 272 F.3d 182, 185 (3d Cir. 2001).

### B. Analysis

Petitioner argues that the Panel majority exceeded their powers in disposing of its arbitration demand by means of summary judgment.  Petitioner relies heavily on the case of *The Chem-Met Co. v. Metaland International, Inc.*, No. Civ. A. 96-02548 (D.D.C. filed Mar. 25, 1998), to support its argument.  In *Chem-Met,* the United States District Court for the District of Columbia (Flannery, J.) vacated an arbitration award pursuant to 9 U.S.C. § 10(a)(4), holding, inter alia, that the arbitrators exceeded their powers by

---

[5]Petitioner does not contest the Panel's finding that Respondent was prejudiced.

deciding the case on summary judgment. *Id.* at 8.  The court interpreted several sections of the AAA's Commercial Arbitration Rules, which the parties in *Chem-Met* had agreed would govern their arbitration proceedings, particularly sections 29, 37 and 56.[6] *Id.* at 4-7. The court concluded that, when read together, these sections strongly imply that an arbitration panel must hold a full evidentiary hearing in every case, absent a joint written waiver pursuant to section 37. *Id.* at 7-8.

The Court finds *Chem-Met* inapposite to the present case because the arbitrators in *Chem-Met* did not grant summary judgment based on the doctrines of res judicata, collateral estoppel or waiver, as the Panel majority did here.  To be sure, the very purpose of the doctrines of res judicata and collateral estoppel is to prevent the relitigation of claims and issues that were already decided in an earlier action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (res judicata prevents the relitigation of issues which were or could have been raised in a prior litigation); *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999) (collateral estoppel prevents relitigation of a fact or legal issue litigated in an earlier action).  Similarly, the doctrine of waiver precludes a party from enforcing a contractual right to arbitration. *See Marranca*, 610 A.2d at 501.  When a

---

[6]Section 37 provided that "[t]he parties may provide, by written agreement, for the waiver of oral hearings in any case.  If the parties are unable to agree to the procedure, the AAA shall specify a fair and equitable procedure." AMERICAN ARBITRATION ASSOCIATION, COMMERCIAL ARBITRATION RULES § 37 (1996).  Section 56 further provided that "[g]enerally, the hearing shall be completed within one day, unless the dispute is resolved by submission of documents under Section 37." AMERICAN ARBITRATION ASSOCIATION, COMMERCIAL ARBITRATION RULES § 56 (1996).  Lastly, Section 29 required that the arbitrators "afford a full and equal opportunity to all parties for the presentation of any material and relevant evidence." AMERICAN ARBITRATION ASSOCIATION, COMMERCIAL ARBITRATION RULES § 29 (1996).

claim or issue is precluded by one of these doctrines, the arbitrators should be able to summarily dispose of the case without the need for an evidentiary hearing.

As the Court has already concluded that the Panel majority did not manifestly disregard the law in concluding that the doctrines of res judicata, collateral estoppel and waiver precluded Petitioner's claims in its arbitration demand, the Court holds that the Panel majority did not exceed their powers in granting summary judgment in favor of Respondent.[7]

## V. Guilty of Misconduct in Refusing to Hear Evidence – 9 U.S.C. § 10(a)(3)

### A. Standard of Review

A district court may vacate an arbitration award "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). "Misconduct" has been construed by the Third Circuit Court of Appeals to mean "not bad faith, but 'misbehavior though without taint of corruption or fraud, if born of indiscretion.'" *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968) (quoting *Stefano Berizzi Co. V. Krausz*, 146 N.E. 436, 437 (1925) (Cardozo, J.)). "The statute cannot be read, however, to intend that every failure to receive relevant evidence constitutes misconduct which will require the vacation of an arbitrator's award." *Id.* at 599. "[T]he court's function is to preserve and enforce the arbitration decision unless there is proof that – aside from the evidence

---

[7]The Court expresses no opinion as to the fundamental fairness of the use of summary judgment in other arbitration contexts aside from this case. The Court notes that the AAA Commercial Arbitration Rules do not expressly provide for summary judgment, nor does it appear that dispositive motions are even contemplated by these rules.

presented – the decision was arrived at illegally or irregularly." *Perna v. Barbieri*, No. Civ. A. 97-5943, 1998 WL 181818, at *3 (E.D. Pa. Apr. 16, 1998).  Indeed, "[o]nly the most egregious error which adversely affects the rights of [a] party constitutes 'misconduct in refusing to hear evidence pertinent and material to the controversy.'" *Grosso v. Barney*, No. Civ. A. 03-MC-115, 2003 WL 22657305, at *6 (E.D. Pa. Oct. 24, 2003) (quoting *Hunt v. Mobil Oil Corp.*, 654 F. Supp. 1487, 1571 (S.D.N.Y. 1987)).

### B. Analysis

Petitioner avers that the Panel majority is guilty of misconduct, under 9 U.S.C. § 10(a)(3), because the Panel majority's use of summary judgment amounted to a refusal to hear evidence pertinent and material to its *ultra vires* and bad faith contentions. Petitioner again cites *Chem-Met*, wherein the court vacated an arbitration award pursuant to 9 U.S.C. § 10(a)(3), holding, inter alia, that the arbitrators were guilty of misconduct in refusing to hear material evidence based on the arbitrators' use of a summary judgment procedure. *Id.* at 8-9.  The court noted that "each party's submissions to the arbitrators were extensively documented and included information touching on all of the key issues in the dispute." *Id.* at 9.  However, the court concluded that, under the AAA's Commercial Arbitration Rules, "it is a bedrock principle that each party must be given a full opportunity to present its case *at a hearing on the evidence*." *Id.* (emphasis added).  "By deciding the case on summary judgment, the arbitrators denied Chem-Met's rights to present its case in full and to test Metaland's case through cross-examination." *Id.*  Accordingly, the court found that the arbitrators' use of summary judgment violated 9 U.S.C. § 10(a)(3) and vacated the arbitration award. *Id.*

As previously stated, *Chem-Met* is inapposite to the case *sub judice* because, here, the doctrines of res judicata, collateral estoppel and waiver preclude Petitioner's claims. Because these doctrines preclude Petitioner's claims, all evidence related to those claims is irrelevant. An evidentiary hearing would therefore be meaningless.

As the Court has already concluded that the Panel majority did not manifestly disregard the law in concluding that the doctrines of res judicata, collateral estoppel and waiver precluded Petitioner's arbitration demand, the Court holds that the Panel majority's grant of summary judgment in favor of Respondent did not constitute misconduct in refusing to hear evidence pertinent and material to the controversy under 9 U.S.C. § 10(a)(3).

## CONCLUSION

For the reasons stated above, the Court will deny Petitioner's Petition to Vacate the Arbitration Award entered in favor of Respondent. Instead, the Court will grant Respondent's Cross-Petition to Confirm the Arbitration Award.

An appropriate Order will follow.


  October 12, 2006                             s/ A. Richard Caputo
Date                                        A. Richard Caputo
                                            United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SHERROCK BROTHERS, INC.,

      Petitioner,

          v.

DAIMLERCHRYSLER MOTORS
COMPANY LLC,

      Respondent.

CIVIL ACTION NO. 06-CV-351

(JUDGE CAPUTO)

## ORDER

**NOW**, this __12th__ day of October, 2006, **IT IS HEREBY ORDERED** that:

(1)    Petitioner's Petition to Vacate Arbitration Award and Remand to Arbitration (Doc. 1-1) is **DENIED**.

(2)    Respondent's Cross-Petition to Confirm Arbitration Award (Doc. 11-1) is **GRANTED**.  The Arbitration Award is **CONFIRMED**.

(3)    **JUDGMENT** is entered in favor of Respondent on the Arbitration Award granting summary judgment in favor of Respondent.

(4)    Respondent shall file the appropriate papers required to be filed under section 13 of the Federal Arbitration Act.

(5)    **JUDGMENT** shall be docketed as if it were rendered in an action and have the force and effect set forth in section 13 of the Federal Arbitration Act.

(6)    The Clerk of the Court shall mark this case as **CLOSED**.

                    __s/ A. Richard Caputo_____
                    A. Richard Caputo
                    United States District Judge